IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02186-RM-MEH

FRONTIER ASTRONAUTICS, LLC,

     Plaintiff,

v.

FRONTIER AEROSPACE CORP.,

     Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court is Defendant's Motion to Dismiss Amended Complaint for Lack of Personal Jurisdiction and/or Improper Venue, or in the Alternative, Motion to Transfer [filed December 17, 2020; ECF 30]. The matter is fully briefed, and the motion has been referred to this Court for disposition. For the following reasons, this Court respectfully recommends that the Honorable Raymond P. Moore grant in part and deny in part Defendant's motion.[1]

---

[1] Be advised that all parties shall have fourteen days after service to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676–83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).

## BACKGROUND

### I.    Procedural History

Plaintiff initiated this action on July 31, 2019, then filed the operative Amended Complaint on December 3, 2019 asserting the following claims against Defendant: (1) trademark infringement under the Lanham Act, 15 U.S.C. § 1114 and 15 U.S.C. § 1125, (2) false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(b), (3) unfair competition under the Lanham Act, 15 U.S.C. § 1125(a) and (4) common law trademark infringement under the laws of Colorado.  Plaintiff alleges it has rights to the trademark FRONTIER ASTRONAUTICS, which Plaintiff "has used continuously and extensively since at least 2005," and that, in 2015, Defendant adopted the mark FRONTIER AEROSPACE for use in connection with the same or confusingly similar services as Plaintiff, which has caused and is likely to cause confusion among consumers in the relevant markets.

In response to the Amended Complaint, Defendant filed the present motion seeking an order dismissing Plaintiff's claims for lack of personal jurisdiction and/or improper venue or, alternatively, transferring venue to the Central District of California.  Defendant argues that it has virtually no contacts with the State of Colorado, and that Plaintiff has failed to demonstrate specific personal jurisdiction over it.  Further, even if minimum contacts are established, Defendant asserts the exercise of jurisdiction over it would be unreasonable pursuant to governing law.  Finally, Defendant contends that the alternative remedy would be to transfer venue of the case to California.

Plaintiff counters that the Court has specific personal jurisdiction over Defendant, as evidenced by the fact that Defendant has harmed Plaintiff in its home state of Colorado; Defendant responded to Plaintiff's cease-and-desist letter by directing the response to Plaintiff's counsel in Colorado;  Defendant has partnered with a Colorado company to provide services to NASA and has used that company's Colorado facility, rather than its California facility; and Defendant has

transacted business in Colorado from which this litigation arose. Plaintiff also argues that this Court's jurisdiction over Defendant does not offend traditional notions of justice and fair play. Finally, Plaintiff contends that Defendant has failed to show a change of venue is proper.

Defendant replies that Plaintiff improperly relies on attenuated contacts and irrelevant information to support its position that the Court has personal jurisdiction over Defendant.

## II.    Statement of Facts

The following are factual allegations made by Plaintiff in its Amended Complaint and offered by the parties for jurisdictional analysis.

1.      Timothy Bendel founded Plaintiff Frontier Astronautics fifteen years ago (it was originally called Frontier Engineering). Frontier Astronautics is in the business of providing products and services to the aerospace industry, including rocket engines, aerospace propellant systems, combustion chambers, pressurization systems, navigational apparatus, attitude control systems, robotic visual navigation systems, custom tooling and testing.

2.      Frontier Astronautics was originally incorporated as a Colorado limited liability company having a principal place of business at 2735 N. Highway 67, Sedalia, Colorado, 80135.

3.      Kurt S. Lewis of Webb Lewis & Meyers, 2300 15th Street, Suite 320, Denver, Colorado, 80202, prepared Frontier Astronautics' articles of incorporation and chartering documents, and further assisted with filing a federal trademark registration for Frontier Astronautics' name and logo in May 2005.  Frontier Astronautics' federal trademark registration published for opposition on April 4, 2006, was not opposed, and was eventually registered as U.S. Reg. No. 3,826,481.

4.      Another attorney at Webb Lewis & Meyers, Ian Walsworth, assisted with the protection of Frontier Astronautics' trademarks, including filing a Statement of Registration of Trademark with the Colorado Secretary of State in April, 2005, covering Frontier Astronautics' name and logo in

connection with rocket engines, rocket vehicle sub-systems, and other aerospace technology.

5.      Frontier Astronautics has used its registered name and logo continuously since at least early 2005. Frontier Astronautics has not undergone any name changes or rebranding throughout its fifteen-year history.

6.      Frontier Astronautics has also been granted U.S. Reg. No. 5,798,429 for the Frontier Astronautics name with design, and has a pending registration for the name (words alone), Frontier Astronautics.

7.      Frontier Astronautics currently has four principal members: Mr. Bendel, Shariar Ghalam, David Hampton, and Kristof Richmond. Ghalam and Hampton both reside and work in Colorado, and Frontier Astronautics' machine shop is located at 6301 Monarch Road, Longmont, Colorado, 80503, where Ghalam also resides. Ghalam performs machining and fabrication work for Frontier Astronautics using milling machines, lathes and other specialized tooling located at the Longmont facility. The Longmont facility also receives raw materials, such as special alloys and supplies.

8.      One year after Frontier Astronautics was founded, Mr. Bendel purchased a test facility located at 609 Windmill Road, Chugwater, Wyoming, 82210 and moved to reside at the Chugwater facility in 2006. The Longmont facility and the equipment listed above remained in Colorado following Mr. Bendel's move to the Chugwater facility. No other employees moved to the Chugwater facility. According to Mr. Bendel, the Longmont and Chugwater facilities remain Frontier Astronautics' only "principal places of business."

9.      Frontier Astronautics' status in Colorado changed to "delinquent" effective May 1, 2006. The Plaintiff became incorporated as a limited liability company in Wyoming effective September 12, 2006, and its status has remained current in Wyoming.

10.     The Longmont facility is not noted as a place of business ("principal" or otherwise) in

Frontier Astronautics' Limited Liability Annual Reports from 2007-2019.

11.    In the past four years, Defendant began marketing, advertising and holding itself out to consumers in the aerospace industry under the name "Frontier Aerospace."

12.    In June 2017, Defendant provided products and materials to a third party located in Colorado under a contract with NASA.  NASA had ordered materials from Defendant, but processed the order through a third party intermediary in Colorado for its own reasons and purposes.

13.    According an internet article, the founder of Advanced Mobile Propulsion Test ("AMPT"), a Colorado-based company located in Durango Colorado, stated that AMPT "partnered" with Defendant in or about 2017.    Article, ECF 42-6.    The article was published in https://companyweek.com on May 1, 2017, and quotes AMPT's founder, Daudi Barnes, as describing the "partnership" with Defendant as " we make a perfect match working with each other . . . to be a new thruster provider for U.S. space systems."  *Id.*

14.    Defendant's principal, Jim McKinnon, attests that he has known Daudi Barnes since approximately 2004, and understood that in 2012, AMPT had some thruster testing equipment and services in its Mojove, California facility, but the equipment was moved to AMPT's Durango, Colorado facility.  Declaration of Jim McKinnon, January 23, 2020 ("McKinnon decl."), ¶¶ 6, 8, ECF 46-8.

15.    Mr. McKinnon attests there was never any "partnership" between Defendant and AMPT but, rather, the companies had a contractor-subcontractor relationship for work performed in 2017, in which "AMPT was to provide thruster testing services for Frontier Aerospace's prototype thrusters."  *Id.* ¶ 11.

16.    As part of the relationship, the companies discussed using the Mojave, California facility, but it was "not realistic . . . because AMPT would have had to move a significant amount of its test

equipment back to Mojave, California to support the testing needed." *Id.* ¶ 13.

17.     Based on McKinnon's relationship with Barnes and his understanding of AMPT's capability to perform the needed testing, McKinnon believed he "did not have any realistic and practical options in terms of using other [sic] testing companies other than AMPT." *Id.* ¶ 15.

18.     The working relationship between Defendant and AMPT ended in late 2017. *Id.* ¶ 16.

## LEGAL STANDARDS

### I.      Fed. R. Civ. P. 12(b)(2)

"Where, as in the present case, there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995); *see also Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 900 (10th Cir. 2017). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

> The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party. However, only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true.

*Wenz*, 55 F.3d at 1505 (citations and internal quotation marks omitted). "[T]o defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating that the presence of some other considerations would render jurisdiction unreasonable." *OMI Holdings, Inc.*, 149 F.3d at 1091 (citation and internal quotations omitted).

"Jurisdiction to resolve cases on the merits requires . . . authority over the parties (personal

jurisdiction), so that the court's decision will bind them." *Gadlin v. Sybron Int'l Corp.*, 222 F.3d 797, 799 (10th Cir. 2000) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999)). In a federal question case, the federal court must determine "(1) 'whether the applicable statute potentially confers jurisdiction' by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process.'" *Peay v. Bellsouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000) (citation omitted). As there is no federal statute authorizing nationwide personal jurisdiction in this case, Fed. R. Civ. P. 4(k)(1)(A) refers to the Colorado long-arm statute. *Old Republic Ins. Co.*, 877 F.3d at 903. In Colorado, only one inquiry is necessary, as the Colorado long-arm statute, Colo. Rev. Stat. § 13-1-124(1), "confer[s] the maximum jurisdiction permitted by the due process clauses of the United States and Colorado constitutions," and its requirements are necessarily addressed under a due process analysis. *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005) (en banc).

## II.     Fed. R. Civ. P. 12(b)(3)

Pursuant to 28 U.S.C. § 1391(b), a civil action may be brought in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

"Once venue is challenged, it is the plaintiff's burden to show that venue is proper in the forum district." *Scott v. Buckner Co.*, 388 F. Supp. 3d. 1320, (D. Colo. 2019) (citation omitted). However, the plaintiff need only make a *prima facie* showing that venue is proper. *Id.* In reviewing

a Rule 12(b)(3) motion to dismiss for improper venue, the Court "may examine facts outside the complaint," and "it must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1260-61 (10th Cir. 2012) (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1352, at 324 (2004)). Specifically, the Court must accept the well-pleaded allegations of the complaint as true to the extent that they are uncontested by the defendant's affidavits. *Id.*

## ANALYSIS

Defendant argues that this Court lacks personal jurisdiction over it due to the paucity of contacts Defendant has with the State of Colorado, and because Plaintiff's claims do not arise out of or relate to Defendant's few contacts. Alternatively, Defendant contends this District is an improper venue for Plaintiff's action and should be transferred to the Central District of California. The Court will determine first whether it has personal jurisdiction over the Defendant.

## I. Personal Jurisdiction

When evaluating personal jurisdiction under the due process clause, the Tenth Circuit conducts a two-step analysis. At the first step, the court examines "whether the non-resident defendant has 'minimum contacts' with the forum state such 'that he should reasonably anticipate being haled into court there.'" *TH Agric. & Nutrition, LLC v. Ace European Grp., Ltd.,* 488 F.3d 1282, 1287 (10th Cir. 2007) (citations omitted). If the defendant has sufficient contacts, the court then asks whether "exercise of jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice,'" that is, whether the exercise of jurisdiction is "reasonable" under the circumstances of a given case. *Id.* (citations omitted). "This analysis is fact specific." *ClearOne Commc'ns., Inc. v. Bowers*, 643 F.3d 735, 763 (10th Cir. 2011) (quoting *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010)).

"A defendant's contact with the forum state may give rise to either general or specific jurisdiction." *C5 Med. Werks, LLC v. CeramTec GMBH*, 937 F.3d 1319, 1323 (10th Cir. 2019) (citing *Old Republic Ins. Co.*, 877 F.3d at 903). First, if a defendant has "continuous and systematic general business contacts" with the forum state, it may be subjected to the general jurisdiction of the forum state's courts. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 416 (1984). Second, even in the absence of "continuous and systematic" contacts, a state's courts may exercise specific jurisdiction over a defendant that "purposefully directed" its activities at the state's residents, if the cause of action arises out of those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985). Specific jurisdiction "has two requirements: '(i) that the defendant must have purposefully directed its activities at residents of the forum state, and (ii) that the plaintiff's injuries must arise out of the defendant's forum-related activities." *C5 Med. Werks, LLC*, 937 F.3d at 1323 (internal brackets and quotation marks omitted).

In addition to examining the defendant's minimum contacts with Colorado, the Court must analyze whether the exercise of personal jurisdiction offends "traditional notions of fair play and substantial justice" in this case. *ClearOne Commc'ns., Inc.*, 643 F.3d at 764. This inquiry requires a determination of whether personal jurisdiction over a defendant with minimum contacts is reasonable in light of the circumstances surrounding the case. *Id.* In assessing reasonableness, a court considers: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.*

A.    Minimum Contacts

Here, Plaintiff asserts this Court's specific (as opposed to general) personal jurisdiction over

Defendant.  Am. Compl. ¶ 5.

"Under the specific-jurisdiction requirement, a plaintiff satisfies the minimum-contacts standard by showing that (1) the defendant has purposefully availed itself of the privilege of conducting activities or consummating a transaction in the forum state, and (2) the litigation results from the alleged injuries that arise out of or relate to those activities." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1160 (10th Cir. 2010).  "Specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011).

In *Walden v. Fiore*, 571 U.S. 277 (2014), the Supreme Court re-articulated the criteria for establishing specific jurisdiction: "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Id.* at 283-84 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). The "defendant's suit-related conduct must create a substantial connection with the forum state," and "the relationship must arise out of contacts that the defendant *himself* creates with the forum State"... with the "minimum contacts analysis look[ing] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 284 (citing *Burger King*, 471 U.S. at 475 and *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 319 (1945)) (emphasis in original).  The "plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connections with the forum State" to support the basis for specific jurisdiction. *Id.* at 285-86 (citing *Burger King*, 471 U.S. at 478); *see also Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1231 (10th Cir. 2020) ("[A] defendant's interaction with a plaintiff—even when allegedly tortious—is insufficient to establish personal jurisdiction.").

1.      Purposeful Availment

For the purposeful availment (or purposeful direction) requirement, the parties both rely on *Calder v. Jones*, 465 U.S. 783 (1984).  In *Calder*, the Supreme Court concluded that the defendant's "intentional, and allegedly tortious, actions were expressly aimed at California."  *Id.* at 789.  The Tenth Circuit, in *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008), interpreted *Calder* to provide a means of demonstrating purposeful direction through "(a) an intentional action ... that was (b) expressly aimed at the forum state ... with (c) knowledge that the brunt of the injury would be felt in the forum state."  *Id..* at 1072.  The court also noted, "... we do not imagine that *Calder* necessarily describes the ***only*** way to satisfy the purposeful direction test ...."  *Id.* at 1071 (emphasis added).

Plaintiff alleges that "Defendant has directed business towards third parties located in or doing business in the State of Colorado under the infringing 'Frontier Aerospace' mark resulting in a likelihood of confusion and actual confusion between Plaintiff and Defendant. Defendant has engaged in and continues to engage in these tortious activities with full knowledge that Plaintiff will be harmed by Defendant's infringement and unfair competition in the State of Colorado."  Am. Compl. ¶ 5.  Defendant argues primarily that, even if it engaged in the alleged tortious conduct (here, trademark infringement, false advertising, and unfair competition) directed at Colorado, it could not have had knowledge that Plaintiff would be injured in Colorado, since Plaintiff is a Wyoming limited liability company with its principal place of business in Chugwater, Wyoming.  The Court agrees that Plaintiff fails to demonstrate purposeful availment through the *Calder* test or otherwise.

Plaintiff alleges that it has two "principal places of business," one in Wyoming and one in Colorado.  Even assuming the Plaintiff has a "Longmont facility," at which Mr. Ghalam performs

machining and fabrication work, Plaintiff points to nothing demonstrating that Defendant did know, or would have known of the Longmont facility or, even, that Plaintiff had a presence in Colorado. The evidence provided includes information available to the public and shows that Plaintiff is registered as a limited liability company in Wyoming, with a "principal office address" in Chugwater, Wyoming. *See* Wyoming Secretary of State "Detail," ECF 33-6, Annual Reports, ECF 46-2, Plaintiff's Website "Contact Us," ECF 46-3. Because the Plaintiff does not establish that Defendant knew (or could have known) that Plaintiff's injury from Defendant's conduct would be felt in Colorado, the Plaintiff fails to show purposeful availment.

Even if Plaintiff could show Defendant knew about the Longmont facility, Plaintiff fails to demonstrate purposeful availment by Defendant's alleged conduct in "providing products and materials under their [sic] 'Frontier Aerospace' mark to a third party located in Colorado under a contract with NASA." Am. Compl. ¶ 15. Plaintiff does not rebut Mr. McKinnon's testimony that NASA had "ordered materials from [Defendant], but processed the order through a third party intermediary in Colorado for its own reasons and purposes" and that Defendant "did not introduce this third party intermediary into the transaction, but rather, was merely complying with its customer's (NASA's) request in this regard." McKinnnon decl. ¶ 15, ECF 31. Thus, Plaintiff fails to show that Defendant expressly aimed this transaction at Colorado.

Further, Plaintiff contends that Defendant "purposefully sent it's [sic] July 16, 2019 correspondence to Frontier Astronautics (directed to Frontier's counsel in Colorado) claiming Defendant was the senior user of the Frontier mark and seeking a complete rebrand from Frontier Astronautics" and that such correspondence "establishes, at a minimum, specific jurisdiction over the issue of priority of the Frontier Mark, which is the primary defense to the alleged infringement."

Resp. 7. However, the Tenth Circuit determined in *C5 Medical Werks, LLC*[2] that "a single cease-and-desist letter is insufficient to confer jurisdiction" in a trademark infringement action. 937 F.3d at 1324 (citing *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1361 (Fed. Cir. 2001) ("We have ... repeatedly held that the sending of an infringement letter, without more, is insufficient to satisfy the requirements of due process when exercising jurisdiction over an out-of-state patentee."). The Court perceives no justification for treating a single response to a cease-and-desist letter differently. The Court concludes that Plaintiff fails to demonstrate Defendant purposefully availed itself of the privilege of conducting activities in Colorado and recommends that Judge Moore grant Defendant's motion to dismiss for this Court's lack of personal jurisdiction.

2.       Litigation Arises Out of, or Relates to Activities

With respect to Plaintiff's remaining allegations, assuming Plaintiff has established purposeful availment, the Court finds Plaintiff fails to meet the other half of its burden—that "the litigation results from the alleged injuries that arise out of or relate to those activities." *See Bartile Roofs, Inc.*, 618 F.3d at 1160. Specifically, Plaintiff alleges that Defendant "formed a partnership with AMPT, a Colorado-based company located in Durango, Colorado, which according to AMPT created 'a new thruster provider for U.S. space systems.'" Am. Compl. ¶ 15. Plaintiff must demonstrate that its claims arose out of or are related to Defendant's activities with AMPT.

Plaintiff's first claim for relief alleges Defendant "willfully and knowingly used, and continues to use, the FRONTIER Mark in interstate commerce *for purposes of selling aerospace products and services* bearing the FRONTIER Mark, throughout the United States, without Plaintiff's consent." *Id.* ¶ 22 (emphasis added). Plaintiff's second claim for relief alleges Defendant

---

[2]The Tenth Circuit reversed the district court's order on which Plaintiff relies for establishing purposeful availment in this case. *See* Resp. 5-6 (citing as an "analogous" case, *C5 Med. Werks v. CeramTec*, No. 14-cv-00643-RBJ, 2014 U.S. Dist. LEXIS 124989 (D. Colo. Sept. 8, 2014)).

"has used, and continues to use, the FRONTIER Mark to falsely advertise that the products and services they *sell*, including false advertising that the products they *sell* are associated or affiliated with Plaintiff and/or are made and sold under the FRONTIER Mark." *Id.* ¶ 32 (emphasis added). Plaintiff's third claim for relief alleges Defendant "has willfully and knowingly used, and continues to use, the FRONTIER mark in interstate commerce *for purpose[s] of selling Defendant's products and services* without Plaintiff's consent." *Id.* ¶ 41 (emphasis added). Plaintiff's fourth claim for relief alleges "Defendant's acts, *as described above*, have caused and are likely to cause confusion or mistake or to deceive customers as to the affiliation, connection or association of Defendant with Plaintiff, or as to the origin, sponsorship or approval of Defendant's goods, services or commercial activities in violation of the common law of Colorado." *Id.* ¶ 52 (emphasis added).

Defendant's principal, Mr. McKinnon, attests without rebuttal that Defendant and AMPT "had a contractor-subcontractor relationship" for work performed in 2017, in which "AMPT was to provide thruster testing services for Frontier Aerospace's prototype thrusters." McKinnon decl. ¶ 11. McKinnon attests that the paperwork defining Defendant's relationship with AMPT has been provided to Plaintiff. *Id.* ¶¶ 10, 11. He also asserts that "[f]or the duration of the relationship between Frontier Engineering and its successor company Frontier Aerospace Corporation, AMPT was a subcontractor that provided testing services to [Defendant]." *Id.* ¶ 14. In other words, Defendant did not sell or advertise its products or services to AMPT; accordingly, Plaintiff has failed to show "the litigation results from the alleged injuries that arise out of or relate to" Defendant's activities with AMPT. *See Bartile Roofs, Inc.*, 618 F.3d at 1160. The Court recommends that Judge Moore grant the Defendant's motion to dismiss for the Court's lack of personal jurisdiction over the Defendant.

B.    <u>Fair Play and Substantial Justice</u>

Having determined that Plaintiff has not met its burden to establish Defendant's minimum contacts with Colorado, the Court need not proceed, but nevertheless concludes that the exercise of personal jurisdiction over Defendant would be unreasonable.

A determination of whether the exercise of jurisdiction is so unreasonable as to violate fair play and substantial justice requires an analysis of the five factors set forth in *ClearOne Commc'ns., supra*: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. 643 F.3d at 764. "The reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of [minimum contacts]." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1079 (10th Cir. 2004) (citing *OMI Holdings, Inc.*, 149 F.3d at 1092).

With respect to the first factor, Defendant argues it is a small company based in Simi Valley, California, owns no property, has no employees, and is not licensed to do business in Colorado, and "having to bring personnel and documents to Colorado for pretrial proceedings and trial will be a significant disruption to its business." Mot. 14. In *Benton*, the Tenth Circuit found the burden on a Canadian defendant to be "significant" considering the company had its principal office in Canada, no office or property in Colorado, no employees in Colorado and was not licensed to do business in Colorado. *Id.* Likewise, Jim McKinnon, President of Defendant Frontier Aerospace, attests:

> 7. Frontier Aerospace does not have, and has never had, any offices, real property, or personal property in Colorado. Nor does Frontier Aerospace own or lease any warehouses or storage spaces in Colorado, nor has it ever done so.

8. Frontier Aerospace does not have, and has never had, any employees or agents in Colorado. All of Frontier Aerospace's employees, including those who might be needed as witnesses in this case, such as myself, perhaps our in-house counsel . . . and potentially a few others, are located near our business in Simi Valley, California. . . .

9. Frontier Aerospace does not have, and has never had, any mailing addresses, telephone numbers, fax numbers, answering services, or messaging services in Colorado.

10. Frontier Aerospace does not have, and has never had, any bank accounts in Colorado.

11. Frontier Aerospace does not have, and has never had, any motor vehicles registered in Colorado.

McKinnon decl., ECF 31. Plaintiff does not dispute these statements. Considering its statements and Defendant's nature as a company doing business in California, the Court finds Defendant would suffer a burden by litigating Plaintiff's claims in Colorado and weighs the first factor against finding personal jurisdiction reasonable.

Second, Plaintiff contends that "states have a strong interest in adjudicating disputes that involve alleged infringement of a local party's intellectual property." Resp. 10. While this is may be true, "[t]he state's interest is also implicated where resolution of the dispute requires a general application of the forum state's laws." *Benton*, 375 F.3d at 1079. Here, Plaintiff alleges it has a presence in Colorado and it seeks application of Colorado law for two[3] of its five claims, but the primary law to be applied in this action is federal law. Accordingly, the Court finds this second factor weighs neutrally in favor of neither party.

The third factor "hinges on whether the Plaintiff may receive convenient and effective relief in another forum. This factor may weigh heavily in cases where a plaintiff's chances of recovery will

---

[3]This assumes that Plaintiff's fifth claim for relief, "Accounting," may be construed as a claim, rather than a request for relief.

be greatly diminished by forcing him to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit." *Id.* In this case, there is no argument that Plaintiff would not receive effective relief with the application of federal law by a federal court in California. *See Benton*, 375 F.3d at 1079. Although it is certainly less convenient for Plaintiff to litigate the action in California, Plaintiff admits that "modern technology makes it easier for a [party] to litigate out-of-state." Mot. 10. Accordingly, the Court finds the third factor weighs slightly against finding this Court's jurisdiction reasonable.

The fourth factor "asks 'whether the forum state is the most efficient place to litigate the dispute.' Key to the inquiry are the location of witnesses, where the wrong underlying the suit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *Id.* at 1080 (internal quotation marks and citation omitted). The Court notes that, although two of Plaintiff's four principals apparently live and work in Colorado, Plaintiff's principal place of business is in Wyoming and Plaintiff does not identify whether injuries from Defendant's alleged conduct were or could be felt specifically in Colorado. With respect to the incidents of "confusion" alleged by Plaintiff, none of them appear to have occurred in Colorado. *See* Declaration of Timothy Bendel, January 7, 2020, ¶¶ 11-13, ECF 42-7; *see also* 42-11. Consequently, this fourth factor weighs slightly against finding this Court's jurisdiction reasonable.

The fifth factor "focuses on whether the exercise of personal jurisdiction by [the forum] affects the substantive social policy interests of other states or foreign nations." Defendant argues this factor weighs neutrally, and the Court finds no basis to conclude that its jurisdiction over Defendant would affect any "substantive social policy interests" of California. Thus, the Court must conclude that this fifth factor weighs neutrally in favor of neither party.

In weighing the required factors, the Court finds the scale tips toward the conclusion that

personal jurisdiction over Defendant would be unreasonable in light of the circumstances in this case and would offend traditional notions of fair play and substantial justice. That, coupled with the Court's finding that Plaintiff has not demonstrated minimum contacts by Defendant with Colorado sufficient to satisfy jurisdictional standards, prompts the Court to recommend that Defendant's motion to dismiss be granted.

## II.     Transfer of Venue

As the Court has determined it may not exercise personal jurisdiction over Defendant, the next step is to consider whether to transfer the case prior to dismissal pursuant to 28 U.S.C. § 1631. *Trujillo v. Williams*, 465 F.3d 1210, 1222-23 (10th Cir. 2006); *Arocho v. Nafziger*, 367 F. App'x 942, 951 n.10 (10th Cir. 2010) (dismissal of an action for lack of personal jurisdiction "without an evaluation of whether justice warranted, rather, a transfer under 28 U.S.C. § 1631 would require a remand for consideration of that alternative."). Section 1631 directs that when a court "finds that there is want of jurisdiction, the court shall, if it is in the interest of justice, transfer [the] action" to any other court in which the action could have been brought at the time it was filed or noticed. The Tenth Circuit has interpreted Section 1631 to grant district courts "discretion in making a decision to transfer an action or instead to dismiss the action without prejudice." *Trujillo*, 465 F.3d at 1222–23 (citing *United States v. Botefuhr*, 309 F.3d 1263, 1274 n.8 (10th Cir. 2002)). When deciding whether to transfer or dismiss an action, the Court should consider the following factors: (1) whether "the new action would be time barred"; (2) whether "the claims are likely to have merit"; and (3) whether "the original action was filed in good faith rather than filed after plaintiff either realized or should have realized that the forum in which he or she filed was improper." *Id.* at 1223 n.16 (citations and internal quotations omitted).

Here, there is no argument nor evidence indicating whether Plaintiff's claims would be time-

barred and it is early in the case to determine whether Plaintiff's claims are likely meritorious; thus, the Court finds that, under the circumstances of this case in which Defendant requests transfer *in the alternative* to dismissal, and Plaintiff strongly opposes such request, the Court recommends that Judge Moore deny transfer of the case. While a cursory consideration of the *Trujillo* factors demonstrates transfer may be appropriate, the Court concludes that justice requires Plaintiff be provided the opportunity to decide whether to re-file its complaint in California.

## CONCLUSION

In sum, the Court finds Plaintiff has failed to demonstrate this Court's personal jurisdiction over the Defendant, but Defendant fails to show that transfer of the action to the Central District of California is proper. Accordingly, the Court respectfully recommends that Defendant's Motion to Dismiss Amended Complaint for Lack of Personal Jurisdiction and/or Improper Venue, or in the Alternative, Motion to Transfer [filed December 17, 2020; ECF 30] be **granted in part and denied in part**, and that the case be dismissed without prejudice.

Dated at Denver, Colorado, this 13th day of March, 2020.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge