IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 1:19-cv-02186-RM-MEH

FRONTIER ASTRONAUTICS, LLC,

    Plaintiff,

v.

FRONTIER AEROSPACE CORP.,

    Defendant.

---

**ORDER**

---

This matter is before the Court on the March 13, 2020, Recommendation of United States Magistrate Judge Michael E. Hegarty (ECF No. 54) to grant-in-part and deny-in-part Defendant Frontier Aerospace Corp.'s ("FAC") motion to dismiss the First Amended Complaint[1] (ECF No. 30) for lack of personal jurisdiction and for improper venue. Plaintiff Frontier Astronautics, LLC ("FA-LLC") filed an objection to the recommendation (ECF No. 55), and Defendant filed a response (ECF No. 56). For the reasons below, the Court MODIFIES[2] and ADOPTS the

---

[1] After full-briefing and recommendation by the magistrate judge, FA-LLC filed an unopposed motion for leave to file a Second Amended Complaint. (ECF No. 65.) The Second Amended Complaint seeks merely to adjust the factual allegations related to FA-LLC's newly granted trademark – U.S. Registration Number 6,013,131, FRONTIER ASTRONATUICS standard character mark covering International Classes 007 and 009 with first use date of February 28, 2005 (U.S. Reg. No. '131), and add an additional count of trademark infringement pursuant thereto. (ECF No. 65-1, ¶¶ 9, 30–41.) The Court granted FA-LLC's unopposed motion at a status conference on August 12, 2020. (ECF No. 68). At the status conference, the parties stipulated that the Second Amended Complaint does not alter the underlying facts which serve as the basis motion to dismiss, the magistrate judge's recommendation, or the related objections and briefing. Therefore, by agreement of the parties, the motion to dismiss, related briefing, and recommendation, are transferrable and are applied to the Second Amended Complaint without further briefing. The Court refers to the First Amended Complaint throughout the Order as operative for the purposes of its personal jurisdiction analysis.

[2] Modification is necessary only in the sense that the Court deviates slightly from the recommendation with respect to purposeful availment. *See infra* p. 11–12. The result, however, remains the same where the unfairness to FAC greatly outweighs its tenuous contacts. *See infra* p. 13.

recommendation, and GRANTS the motion to dismiss.

I. **LEGAL STANDARDS**

A. **Review of the Magistrate Judge's Recommendation**

Pursuant to Fed. R. Civ. P. 72(b)(3), this Court reviews de novo any part of the magistrate judge's recommendation that is properly objected to. An objection is proper only if it is sufficiently specific "to focus the district court's attention on the factual and legal issues that are truly in dispute." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996). "In the absence of a timely objection, the district court may review a magistrate's report under any standard it deems appropriate." *Summers v. State of Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991).

B. **Rule 12(b)(2) Motion**

Fed. R. Civ. P. 12(b)(2) allows a defendant to move to dismiss a complaint for lack of personal jurisdiction. To defeat such a motion by establishing specific personal jurisdiction, a plaintiff must first show that the defendant has "minimum contacts" with the forum state. *Intercon Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). The "minimum contacts" standard is met if the defendant has purposefully directed its activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities. *Id.* If the defendant has sufficient "minimum contacts" with the forum, the Court then considers whether exercising jurisdiction is consistent with traditional notions of fair play and substantial justice. *Id.* A five-factor test is used to determine whether the exercise of jurisdiction is reasonable. *Id.*

II. **PROCEDURAL BACKGROUND**

No party objects to the magistrate judge's recitation of the case's procedural history.

2

Accordingly, the Court adopts and incorporates the procedural history included within the recommendation as if set forth herein. (ECF No. 54, at 2–3.) Subsequent to the magistrate judge's recommendation, FA-LLC filed for and was granted leave to file a Second Amended Complaint on August 12, 2020.[3] (ECF Nos. 65, 68.) Therefore, before the Court is the Second Amended Complaint, though the First Amended Complaint's facts relevant to personal jurisdiction are unaffected and form the basis for the Court's analysis.

### III. FA-LLC's FIRST AMENDED COMPLAINT

FA-LLC is in the business of offering for sale and selling hardware, specifically, propulsion related devices and systems related to spacecraft and space vehicles. (ECF No. 29, ¶ 7.) FA-LLC is a Wyoming limited liability company with a principal place of business also in Wyoming. FA-LLC was originally incorporated under the laws of Colorado and still allegedly maintains a place of business at 6301 Monarch Rd., Longmont, CO 80503.

FA-LLC is the owner of at least one trademark – U.S. Registration Number 5,798,429, FRONTIER ASTRONAUTICS with design, covering International Classes 007 and 009 with a first use date of January 31, 2009 (the "FRONTIER Mark"). (*Id.* ¶ 9.)

FAC is a California corporation with a principal place of business at 4109A Guardian St., Simi Valley, CA 93063 that, according to FA-LLC, offers the same the same or similar products as FA-LLC through the same channels of trade. (*Id.* ¶¶ 3, 12.) Relevant to personal jurisdiction, FA-LLC alleges FAC provided products and services similar to that of FA-LLC under the "Frontier Aerospace" name to a "third party located in Colorado" pursuant to a contract FAC was awarded by NASA. (ECF No. 29, ¶ 15.) FA-LLC also alleges FAC entered into a partnership with AMPT,[4] a Durango, CO company, which "created a new thruster

---

[3] *See supra* note 1
[4] Elsewhere identified as Advanced Mobile Propulsion Test.

provider for U.S. space systems." (*Id.* ¶ 15) (internal quotation marks omitted).

FA-LLC alleges FAC's use of the "Frontier Aerospace" name in connection with the aforementioned Colorado contacts creates a likelihood of confusion between FAC's name and FA-LLC's FRONTIER Mark felt here in Colorado. (*Id.* ¶ 16.)

**IV.    THE MAGISTRATE JUDGE'S RECOMMENDATION**

FAC moved to dismiss the First Amended Complaint for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and for improper venue under Fed. R. Civ. P. 12(b)(3). (ECF No. 30.) The motion was referred to the magistrate judge. After the motion was fully briefed, the magistrate judge issued a report and recommendation to grant the portion of FAC's motion to dismiss for lack of personal jurisdiction but deny the portion based on improper venue.

The magistrate judge concluded FA-LLC contends only that FAC is subject to specific jurisdiction in Colorado. (ECF No. 54, at 9–10.) Despite acknowledging that FAC had some business relationship with AMPT and AMPT's testing facilities located in Colorado, and that FA-LLC owned at least one federal trademark registration, the magistrate judge ultimately concluded that FAC had not purposefully availed itself of Colorado jurisdiction because "Plaintiff does not establish Defendant knew (or could have known) that Plaintiff's injury from Defendant's conduct would be felt in Colorado." (*Id.* at 12.) The magistrate judge also gave some weight to FAC's argument that its activities involving Colorado were involuntary because they were merely at NASA's direction. (*Id.*) In that sense, the magistrate judge determined "Plaintiff fails to show that Defendant expressly aimed this transaction at Colorado." (*Id.*) The magistrate judge also determined a single response to a cease-and-desist letter should be treated no differently than a single cease-and-desist letter for jurisdictional purposes. (ECF No. 54, at 12–13.)

4

With respect to whether this litigation arises out of FAC's activities in Colorado, the magistrate judge determined that because of the contractor-subcontractor relationship between FAC and AMPT to test prototype thrusters, it cannot be said that FAC "did not sell or advertise its products or services to AMPT." (ECF No. 54, at 14.) Therefore, the magistrate judge concluded mere use in connection with a service, as alleged by FA-LLC in its First Amended Complaint, was insufficiently related to any trademark infringement claim, false advertising claim, or unfair competition claims, asserted in the First Amended Complaint. (*Id.* at 13–14.)

Despite having already concluded FA-LLC failed to establish its burden of establishing FAC's minimum contacts with Colorado, the magistrate judge weighed the relevant factors to determine whether jurisdiction offends traditional notions of fair play and substantial justice and found that it would be unreasonable to subject FAC to jurisdiction in Colorado. (ECF No. 54, at 15–18.)

V.      **ANALYSIS**

FA-LLC argues the magistrate judge failed to properly consider the weight of FAC's contacts with Colorado and FAC's knowledge of FA-LLC's nationwide rights given its federal registration of the FRONTIER Mark. (ECF No. 55, at 4, 7.) FA-LLC also argues FAC fails to establish a compelling case that it is otherwise unreasonable to continue the lawsuit in Colorado where (1) modern technology makes it easier to conduct litigation from outside the forum state, and (2) the effects of the SARS-CoV-2 ("COVID-19") pandemic would have less of an impact on both parties if the lawsuit remained in Colorado.

In response, FAC argues to the extent FA-LLC offers new evidence and new theories, these new bases for asserting personal jurisdiction should not be considered by the Court as these arguments has been waived. (ECF No. 56, at 4–7, 9.) FAC also argues the magistrate judge

5

properly considered the record evidence and accordingly recommended granting FAC's motion to dismiss for lack of personal jurisdiction on the merits. (ECF No. 56, at 7–21.)

Neither party, however, objects to any other findings or determinations in the recommendation, namely the portion of FAC's motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3). The Court discerns no clear error on the face of the record with respect to those portions of the recommendation, and the Court agrees with the magistrate judge's determination that transfer for improper venue under 28 U.S.C. § 1631 may be appropriate, but that justice requires Plaintiff be afforded the opportunity to decide whether to refile in another venue.[5]

To establish personal jurisdiction over an out-of-state defendant, the plaintiff must make a prima facie showing that "jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *C5 Medical Werks, LLC v. CeramTec GMBH*, 937 F.3d 1319, 1322 (10th Cir. 2019). "Because Colorado's long-arm statute confers maximum jurisdiction permitted by constitutional due process, *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005), our only question is whether the [Court's] exercise of personal jurisdiction comports with due process." *C5 Medical Werks*, 937 F.3d at 1322 (citing *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008)).

"Due process requires that the out-of-state defendant both 'purposefully established minimum contacts within the forum State' and the 'assertion of personal jurisdiction would comport with fair play and substantial justice.'" *C5 Medical Werks*, 1322–23 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (internal quotation marks omitted). A

---

[5] The magistrate judge, having concluded that dismissal under Fed. R. Civ. P. 12(b)(2) was warranted, did not reach the issue of whether the case should be dismissed under Fed. R. Civ. P. 12(b)(3).

defendant's contact with the forum state may give rise to either general or specific jurisdiction. *Id.* Personal jurisdiction can be general, based on "continuous and systematic" contacts with the forum state, or specific. *Id.* "Specific jurisdiction means that a court may exercise jurisdiction over an out-of-state party only if the cause of action relates to the party's contacts with the forum state." *Id.* at 1323. There is a two-step inquiry for specific jurisdiction: "(a) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and, if so, (b) whether the defendant has presented a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017)). The minimum contacts test as it relates to specific personal jurisdiction has two requirements: "(i) that the defendant must have 'purposefully directed its activities at residents of the forum state,' and (ii) that 'the plaintiff's injuries must arise out of the defendant's forum-related activities.'" *Id.* (quoting *Old Republic*, 877 F.3d at 904). This lawsuit turns on the question of specific personal jurisdiction.

    A. **Minimum Contacts**

        1. *New facts and theories*

At the outset, FAC argues the Court cannot consider new facts and theories not previously asserted by FA-LLC as they were waived. The Court determines it may. "In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived." *United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001). However, Fed. R. Civ. P. 72(b) places the decision of whether to receive additional *evidence* with the "sound discretion of the district court." *Robinson v. Younger*, No. 05-cv-01028-EWN-BNB, 2007 WL 2697621, at *1 (D. Colo. Sept. 11, 2007) (citing *Doe v. Chao*, 306 F.3d 170, 183 n.3 (4th Cir. 2002), *aff'd*, 540 U.S. 614 (2004)); *see also* Fed. R. Civ. P. 72(b) ("[t]he district judge may . . .

7

receive further evidence" in conducting *de novo* review of objected-to portions of a magistrate judge's report and recommendation); *Waller v. City and Cty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (same).

The Tenth Circuit cases cited by FAC in support of its waiver argument involved whether a court could consider new theories. *See U.S. v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001) (court declined to entertain a new argument that probation and supervised release were functionally equivalent); *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) (court declined to consider claimant's due process argument because it was not raised before the administrative law judge or Appeals Council). Neither case addresses the Tenth Circuit's view on introducing additional evidence after a magistrate judge renders a report and recommendation.

FAC advocates for a more restrictive interpretation under Fed. R. Civ. P. 72(b)(3). (ECF No. 56, at 5–6 (citing *Robinson*, 2007 WL 2697621, at *2–3; *Housing Works, Inc. v. Turner*, 362 F. Supp. 2d 434, 438 n.8 (S.D.N.Y. 2005); *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998)). After review, FAC challenges only the consideration of additional *evidence*. (*See* ECF No. 56, at 6–7) (referencing Kulite Semiconductor trademark specimen and the DLA Energy agreement).

Ultimately, however, even if it were to consider this additional evidence, which it has discretion to do, the Court concludes it need not, because the jurisdictional facts – as they relate to FAC's relationship with AMPT – are sufficiently supported by the declaration of FAC's own President. (*See* ECF No. 31, ¶ 15.)

    2. ***Purposeful availment***

With that in mind, the aim regarding whether a defendant "purposefully directed" its

activities toward the forum state is to "ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Dudnikov*, 514 F.3d at 1071.

FA-LLC primarily alleges one category of contact with Colorado with any specificity: FAC's work with AMPT. (ECF No. 29, ¶ 15.) Both the parties and the recommendation dedicate a significant amount of time addressing whether FAC knew of FA-LLC's presence in Colorado in satisfaction under the *Calder* test. *See Dudnikov*, 514 F.3d at 1072 (citing *Calder v. Jones*, 465 U.S. 783 (1984)) (distilling *Calder* to its essence: (a) an intentional action, that was (b) expressly aimed at the forum state, with (c) knowledge that the brunt of the injury would be felt in the forum state). It is clear here that FAC meets the purposeful availment requirement under the *Calder* test.

Despite FAC's attempt to characterize its relationship with AMPT in Colorado as something less than voluntary, FAC's President, Jim McKinnon affied that "Frontier Aerospace hired a company in Colorado to perform technical testing of a rocket engine design we made. . . . [W]e worked with the entity we believed would provide us with the testing services needed." (ECF No. 31, ¶ 15.) This statement alone satisfies the first and second element of the *Calder* test. With respect the third, the question is essentially whether FAC knew an injury would be felt in Colorado.

What the recommendation does not address is that a federally registered trademark is "constructive notice of the registrant's claim of ownership thereof." 15 U.S.C. § 1072. It is fundamental to federal trademark ownership that it "provides national protection for trade and service marks used in interstate [] commerce." *First Sav. Bank, F.S.B. v. First Bank System, Inc.*, 101 F.3d 645, 651 (10th Cir. 1996). Consequently, use of an allegedly infringing mark as defined

9

under the Lanham Act in a State naturally leads to injury in that State and nationwide – wherever the senior user's mark is used. *See Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 972 (10th Cir. 2002) (citing 15 U.S.C. § 1114(1)(a)) (the Lanham Act "prohibits the unauthorized use of a counterfeit or imitation of the registered mark likely to cause confusion in the marketplace concerning the source of the different products"); *see also* 15 U.S.C. § 1057(c) (registration of a mark on the principal register constitutes constructive use of the mark, "conferring a right of priority nationwide in effect"). FA-LLC alleges the elements of a trademark infringement claim: (1) plaintiff has a protectable interest in the mark; (2) defendant used "an identical or similar mark" in commerce; and (3) defendant's use is likely to confuse consumers. (ECF No. 29, ¶¶ 9, 15, 16); *see also 1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013) (internal citations omitted). Taken together with constructive notice of FA-LLC's trademark and its nationwide rights (ECF No. 29-2), it is sufficient for purposeful availment purposes that if FAC used an infringing mark in Colorado, it either did know or should have known that FA-LLC would be injured in Colorado. Therefore, FA-LLC meets its burden under the *Calder* test.

       3. ***Arising out of or relate to forum activities***

The Court must then "determine whether a nexus exists between the Defendant's forum-related contacts and the Plaintiff's cause of action." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1160 (10th Cir. 2010) (internal quotation marks omitted). The Tenth Circuit has rejected the "substantial connection" test, *Dudnikov*, 514 F.3d at 1078–80, but has not "picked sides" with respect to whether the relationship between forum contacts and plaintiff's injury should be proximate cause or "but-for" causation. *Bartile Roofs*, 618 F.3d at 1160–61. "Proximate cause is the most restrictive approach and requires courts to analyze 'whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claim,'"

10

whereas "but-for" causation "supports the exercise of personal jurisdiction based on 'any event in the causal chain leading to the plaintiff's injury.'" *Id.* at 1161.

Under either approach, FA-LLC's lawsuit arises out of FAC's contact with Colorado.[6] The recommendation focuses on the First Amended Complaint's language that alleges FA-LLC was injured as the result of sales in Colorado. (ECF No. 54, at 13–14.) The recommendation with respect to this element concludes, "[FAC] did not sell or advertise its products or services to AMPT." (*Id.* at 14.) It, however, omits important language in the First Amended Complaint: "[FAC]'s unauthorized use of the FRONTIER Mark has infringed upon and materially damaged the value of the FRONTIER Mark, and has caused significant damage to [FA-LLC]'s business relationships." (ECF No. 29, at ¶ 25.) That is, of course, the nature of a trademark infringement injury – damage to the trademark owner's goodwill. 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION [hereinafter MCCARTHY] § 30:2.50 (5th ed. 2020) ("The law views the owner of a trademark as damaged by an infringing use 'which place[s] the owner's reputation beyond its control, though no loss in business is shown.' This probable loss of control over reputation and goodwill is presumed by the law to be an injury.") (internal citations omitted); MCCARTHY § 2:10 ("[T]he 'property' parameters of a trademark are defined very differently from any other kind of 'property.' In almost all cases, the exclusive 'property' right of a trademark is defined by

---

[6] While is not exactly clear the intended effect of FA-LLC's argument, the Court notes that FA-LLC implicitly argues certain pre-litigation correspondence is sufficient to grant personal jurisdiction, or at the very least that the correspondence is sufficient to satisfy this element of the minimum contacts requirements. (ECF No. 55, at 5.) Specifically, FA-LLC argues the magistrate judge failed to appreciate the full extent of FAC's correspondence with FA-LLC's representatives in Colorado and that FAC's response to the cease and desist letter wherein FAC challenged the validity of FA-LLC's trademark is similar to *Dudnikov*, where Tenth Circuit found personal jurisdiction as the result of a cease and desist letter response wherein defendant threatened a lawsuit. (*Id.*); *see also Dudnikov*, 514 F.3d at 1079. Unlike *Dudnikov*, this case is not for declaratory judgment resulting from FA-LLC's desire to protect itself from defending against an infringement lawsuit. Instead, the facts here are more similar to *Inamed Corp. v. Kuzmak*, 249 F.3d 1356 (Fed. Cir. 2001) and *C5 Medical Werks* as cited in the recommendation. (ECF No. 54, at 13); *see also Akro Corp. v. Luker*, 45 F.3d 1541, 1548 (Fed. Cir. 1995) ("[W]arning letters from and negotiations for a license with an out-of-state patentee cannot, without more, support personal jurisdiction in an action for a declaratory judgment of patent invalidity and noninfringement.")). Therefore, the Court rejects the argument that the asserted pre-litigation correspondence has any effect on the Court's personal jurisdiction analysis.

customer perception."); MCCARTHY § 30:2 ("Likelihood of confusion of customers means the trademark owner's business reputation and goodwill are in jeopardy."). Consequently, what matters for the purposes of personal jurisdiction it is *not* whether FAC's alleged infringing use of a FRONTIER-formative mark actually affected FA-LLC's sales, but whether FAC's use of an infringing FRONTIER-formative mark *could have* affected FA-LLC's goodwill related to its FRONTIER Mark, generally. That being the correct inquiry, it is clear that under either the proximate cause or the "but-for" causation approach, FA-LLC's allegations are sufficient to show the allegations arise out of or are related to FAC's contacts with AMPT in Colorado. *See Bartile Roofs*, 618 F.3d at 1161.

Therefore, the Court concludes FA-LLC has satisfied its burden of establishing the minimum contacts requirements for specific personal jurisdiction over FAC where FAC purposefully availed itself of Colorado's jurisdiction by doing business therein and that FA-LLC's allegations arise out of or are related to those Colorado contacts.[7]

### B. Fair Play and Substantial Justice

Having determined that FA-LLC has satisfied its burden with respect to FAC's minimum contacts for specific personal jurisdiction, the Court must now analyze whether subjecting FAC to personal jurisdiction in Colorado would offend traditional notions of fair play and substantial justice. *ClearOne Communications, Inc. v. Bowers*, 643 F.3d 735, 764 (10th Cir. 2011). At this stage, it is FAC's burden to show a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (citing *Bartile Roofs*, 618 F.3d at

---

[7] To the extent the parties implicitly argue that FAC's FRONTIER-formative mark was not "use in commerce" as defined by § 1114(1)(a) of the Lanham Act, by arguing FAC did not in fact sell or offer for sale any goods or services under its FRONTIER-formative mark, these arguments relate to the merits of FA-LLC's trademark infringement claim and are not appropriate for consideration of a motion to dismiss for lack of personal jurisdiction. *See Amoco Oil Co. v. Rainbow Snow*, 748 F.2d 556, 557–58 (10th Cir. 1984).

1161). "This reasonableness analysis requires the weighing of five factors: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies." *Id.* "The reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1079 (10th Cir. 2004). The Court acknowledges FAC's minimum contacts, *supra*, are relatively weak. Therefore, FAC's burden of establishing unfairness is on the low end of the scale.

FA-LLC generally objects to the magistrate judge's recommendation that even if the minimum contacts requirements were satisfied, the fairness factors would otherwise indicate personal jurisdiction over FAC would be "unreasonable in light of the circumstances in this case and would offend traditional notions of fair play and substantial justice." (ECF No. 54, at 14–18.) FA-LLC challenges this conclusion on three grounds. First, FA-LLC argues technology makes it easier to litigate out-of-state. Second, FA-LLC argues Colorado has a strong interest where the lawsuit involves the alleged infringement of a Colorado party's intellectual property.[8] Finally, FA-LLC alleges the parties would feel less then effects of the Coronavirus pandemic by continuing to litigate this case in Colorado.

**_Burden on FAC of litigating in Colorado._** With respect to the first factor, the magistrate judge identified and listed the relevant statements provided by McKinnon via affidavit. (ECF No.

---

[8] The parties dispute whether FA-LLC is truly a Colorado party where its Colorado status is "delinquent," effective May 1, 2006 and is incorporated as a Wyoming limited liability corporation, effective September 12, 2006 even though FA-LLC still lists its principal place of business as Longmont, Colorado. (ECF No. 54, ¶¶ 9, 10.)

54, at 15 – 16 (citing ECF No. 31, ¶¶ 7–11).) In essence, these statements support the notion that FAC has no connection to Colorado aside from its relationship with AMPT. Most notably, McKinnon stated that FAC has never had employees, personal property, real property, or physical address in Colorado. (ECF No. 31, ¶¶ 7–9.) The magistrate judge noted FA-LLC did not object to these statements. (ECF No. 54, at 16.) FA-LLC objects to this characterization, but fails to identify upon what grounds its objection is based. (ECF No. 55, at 11.) It is unclear upon what grounds FA-LLC asserts these objections to the facts on which the magistrate judge relied. Upon review, the Court finds no clear error in accepting and incorporating the "fairness facts" as provided in the recommendation. (*See* ECF No. 54, 14–18); *Summers*, 927 F.2d at 1167.

FA-LLC generally objects on the grounds that modern technology makes litigating in foreign forums much easier but makes no attempt at distinguishing this case from precedent as provided by the recommendation. Specifically, the magistrate relied on *Benton v. Cameco Corp.* in concluding that a Canadian corporation with virtually no other connection to Colorado would be unreasonably burdened by litigating in Colorado. (ECF No. 54, at 15–16 (citing *Benton*, 375 F.3d 1070, 1079 (10th Cir. 2004)).) Certainly, some of the concerns listed by the *Benton* court are not applicable here, namely, FAC is not from a different country subject to different laws. *Benton*, 375 F.3d at 1079. However, this case is similar to *Benton* in the sense that FAC is entirely present in California without offices or personnel in Colorado. (ECF No. 54, at 15 – 16 (citing ECF No. 31, ¶¶ 7–11)); *see Benton*, 375 F.3d at 1079 (defendant is a "Canadian corporation with principal offices in Saskatchewan, and it has no office or property in Colorado, is not licensed to do business in Colorado, and has no employees in Colorado.") While modern technology no doubt alleviates some of the burden on an out-of-state defendant, the Court does not find FA-LLC's argument persuasive and concludes that the magistrate judge properly

14

concluded the first factor weighed against a finding of personal jurisdiction in Colorado.

***Colorado's interest in resolving the dispute.*** FA-LLC next challenges the recommendation because Colorado has a strong interest in adjudicating disputes involving intellectual property of a Colorado party. (ECF No. 55, at 11.) The magistrate judge determined that personal jurisdiction within Colorado could also be supported where the "resolution of the dispute requires a general application of the forum state's laws." (ECF No. 54, at 16 (citing *Benton*, 375 F.3d at 1079).) In this instance, FA-LLC brings two Colorado state law claims but primarily relies on federal law. (*Id.*) However, the record indicates that while a number of FA-LLC's executives still reside in Colorado all documentary evidence points to FA-LLC being a Wyoming company. (ECF Nos. 29-1, 29-2, 46-2, 46-3.) Therefore, the Court is unpersuaded that Colorado has any significant interest in adjudicating this dispute to the extent that argument is founded upon the assumption that FA-LLC is a Colorado company. While the alleged infringement arises out of activities in Colorado, either California or Wyoming has a greater interest than Colorado. Accordingly, this factor weighs against personal jurisdiction in Colorado.

***Miscellaneous challenge.*** Finally, without identifying which factor it is challenging, FA-LLC argues that the effects of the Coronavirus pandemic would be less acutely felt by the parties if they were to continue litigating the case in Colorado than in California without citing *anything* in support. (ECF No. 55, at 12.) Therefore, the Court rejects this argument as an unsupported and improperly generalized objection. *See Summers*, 927 F.2d at 1167.

For these reasons, the Court concludes that while FAC's Colorado contacts are sufficient for the purposes of establishing minimum contacts, subjecting FAC to personal jurisdiction in Colorado does not comport with traditional notions of fair play and substantial justice.

## VI. CONCLUSION

Based on the foregoing, it is ORDERED

(1) That FA-LLC's objection (ECF No. 55) is OVERRULED;

(2) That the magistrate judge's recommendation (ECF No. 54) is MODIFIED and ADOPTED in accordance with the above Order;

(3) That FAC's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 30.) is GRANTED without prejudice;

(4) That JUDGMENT shall enter in favor of FAC and against FA-LLC; and

(5) That the Clerk shall close the case.

DATED this 9th day of September, 2020.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge